## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES MITCHELL,<br>        *Plaintiff,* | | |
| v. | | No. 3:23-cv-896 (JAM) |
| SARAH SCHAUER *et al.*,<br>        *Defendants*. | | |

### INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C § 1915A

Plaintiff James Mitchell is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed this complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983, alleging that six DOC employees violated his constitutional rights. As set forth below, I will allow his Eighth Amendment deliberate difference claim against APRN Sarah Schauer to proceed, but I will otherwise dismiss all other claims and defendants from this action.

### BACKGROUND

Mitchell's claims arise from his medical treatment at MacDougall-Walker Correctional Institution ("MacDougall") and his subsequent transfer to another prison.[1] He has since been transferred to a third facility, Garner Correctional Institution ("Garner").[2]

Mitchell's complaint names six defendants: Rose Walker, Health Services Review Coordinator; Marybeth Moure, laboratory technician; Sarah Schauer, APRN; C.S. Stanley, supervisor of Mitchell's correctional counselor; David Snyder, Director of Population Management; and Karen Grande, APRN.[3] I draw the following facts from the allegations in Mitchell's complaint, accepting them as true only for the purposes of this ruling.

---

[1] Doc. #17 at 6-12.
[2] Doc. #18.
[3] Doc. #17 at 1-2.

1

In or around January 2023, Mitchell reviewed his medical records and learned that his cholesterol levels were high.[4] His MacDougall healthcare provider, APRN Schauer, had failed to inform him of this development, despite knowing that his mother passed away in 2021 due to heart disease.[5] In fact, Schauer had "falsely told [Mitchell] on many occasions that his bloodwork/lab testing showed that everything looked 'good.'"[6]

As a result of Schauer's failure to treat the high cholesterol, Mitchell has experienced "mild symptoms of a heart attack, inconsistent heart beats, blood pressure issues and a low heart rate," for which he was given medication "to prevent a heart attack."[7] He also met with a cardiologist at UConn Health due to his "complications and possible mild s[y]mptoms of a heart attack."[8] Mitchell did not experience any of these symptoms when his cholesterol levels were normal.[9]

Schauer also prescribed him unnecessary medication that affected his liver and "failed to correctly and adequately provide treatment to [him] which caused a skin infection to spread."[10]

In or around March 2023, Mitchell wrote "requests, complaints and health grievances" to HSR Coordinator Walker related to Mitchell's medical concerns.[11] But Walker failed to respond to the grievances, and this caused an "interference in [Mitchell's] medical treatment issues."[12] Walker also "allowed an inmate to process health service grievances to circumvent the grievance system."[13]

---

[4] *Id.* at 8 (¶ 15).
[5] *Id.* at 8 (¶¶ 15-16).
[6] *Id.* at 8 (¶ 16).
[7] *Id.* at 8 (¶ 18).
[8] *Id.* at 9 (¶ 20).
[9] *Id.* at 8 (¶ 19).
[10] *Id.* at 10 (¶¶ 29-30).
[11] *Id.* at 6 (¶ 1).
[12] *Id.* at 6 (¶ 4).
[13] *Id.* at 6 (¶ 5).

More generally, Walker has exhibited "a pattern of misconduct by not responding to grievances, not filing grievances adequately, falsely claiming grievances were not received, illegally allowing unauthori[z]ed person[n]el to collect and process grievances and rejecting grievances improperly."[14] Mitchell adds that another defendant, lab tech Moure, has also been "collecting health service grievances despite being unauthorized to do so," causing grievances to become "missing and unaccounted for."[15]

Also in March of 2023, Mitchell "wrote a request/complaint to [Moure] about [his] medical information that [Moure] was aware of."[16] He requested that a correctional officer and a correctional counselor contact Moure, apparently because Moure "gave instructions for [Mitchell] to write [Moure] in a specific way because [Mitchell's] other request/complaint was sent the wrong way."[17] Mitchell's correctional counselor contacted Moure who stated she would speak to Mitchell.[18]

Shortly thereafter, Mitchell was interviewed by a staff member of the facility's security division, Stanley, about a claim Moure made.[19] Moure reported that Mitchell contacted her directly, though Mitchell believes this claim was investigated and discredited.[20] According to Mitchell, Moure made her claim in order to retaliate against him for filing a complaint, and it was this claim that prompted his transfer to another facility.[21] Although Mitchell was never informed that he had violated any DOC rules as a result of Moure's claim, the facility to which

---

[14] *Id.* at 7 (¶ 8).
[15] *Id.* at 7 (¶ 9).
[16] *Id.* at 7 (¶ 10).
[17] *Id.* at 7 (¶ 11).
[18] *Id.* at 7 (¶ 12).
[19] *Id.* at 7 (¶ 13).
[20] *Ibid.*
[21] *Id.* at 8 (¶ 14).

he was transferred is "designed for inmates who receive[] misconduct reports and for other punishment reasons."[22]

Defendant CS Stanley "condoned and assisted" Moure in her retaliation by failing to adequately investigate Moure's false claim.[23] He did not speak to the correctional officer or correctional counselor who were involved.[24] As a result of Stanley's failure, "[Mitchell] was retaliated against and transferred."[25] Similarly, Director Snyder approved Mitchell's transfer even though it was based on Moure's unfounded allegations.[26]

Mitchell notes that he was transferred to another facility where Moure also works, which demonstrates "lack of oversi[ght], retaliation, abuse of power, and illegal treatment of prisoners."[27] Finally, Mitchell believes that he was transferred "in part for assisting the inmate population at [M]acDougall [C.I.] with preparing legal papers and understanding legal issues as [he] was the library worker [there]."[28]

On or around May 1, 2023, Mitchell arrived at Corrigan-Radgowski Correctional Center ("Corrigan"), where he informed the medical staff about his treatment, including that he did not have his heart/cholesterol medication, which he was required to take daily.[29] On May 19, after writing requests, complaints, and health grievances, Mitchell was seen by APRN Grande, who then prescribed the medication.[30] This delay of nearly twenty days occurred because Grande had

---

[22] *Id.* at 9 (¶ 24).
[23] *Id.* at 9 (¶ 21).
[24] *Id.* at 9 (¶ 22).
[25] *Id.* at 9 (¶ 23).
[26] *Id.* at 10 (¶ 25).
[27] *Id.* at 10 (¶ 27).
[28] *Id.* at 10 (¶ 28).
[29] *Id.* at 11 (¶¶ 31-32).
[30] *Id.* at 11 (¶¶ 32-35).

failed to review Mitchell's treatment plan.[31] Grande also prescribed Mitchell unnecessary blood pressure medication.[32]

A couple months later, at his July appointment with the cardiologist, he and the doctor discovered that Grande only sent his recent lab work, not his April 2023 lab work "showing inconsistent test results of the plaintiff's heart issue[]s."[33] According to Mitchell, Grande tried to "disguise [his] medical issues to the outside doctor" and to claim that he "did not have any issues."[34]

The following month, in August, Mitchell informed Grande that the staff at UConn had told him he did not need blood pressure medication.[35] Grande "refused to follow the [UC]onn medical center doctor's orders to place [Mitchell] on a heart monitor for thirty (30) days."[36] Grande also prescribed him the wrong treatment for his skin infection, as well as prostate medication despite no confirmed results indicating he had prostate issues.[37]

Mitchell brings multiple constitutional claims against each of the above defendants.[38] He also makes claims of "false allegations," "abuse of authority," and "failure to treat."[39] "The Court considers the federal claims by substance, rather than count" and construes the first two of these counts as claims of First Amendment retaliation and the final count as an Eighth Amendment deliberate indifference claim. *Chimney v. Quiros*, 2021 WL 5281608, at *6 (D. Conn. 2021). Mitchell seeks declaratory relief, compensatory damages, and punitive damages.

---

[31] *Id.* at 11 (¶ 36).
[32] *Id.* at 11 (¶ 37).
[33] *Id.* at 12 (¶ 39).
[34] *Ibid.*
[35] *Id.* at 12 (¶ 40).
[36] *Id.* at 12 (¶ 41).
[37] *Id.* at 12 (¶ 42).
[38] *Id.* at 13 (¶¶ 43-48).
[39] *Id.* at 13 (¶¶ 44-45, 48).

## DISCUSSION

The Court is required by law to review prisoner civil complaints and dismiss any portion of such complaints that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A. In reviewing a *pro se* complaint, the Court must construe the allegations liberally, interpreting them to raise the strongest arguments they suggest. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*).[40] However, a *pro se* complaint must still allege enough facts—as distinct from legal conclusions—to establish plausible grounds for relief. *See, e.g., Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

Prisoners are also required, pursuant to the Prison Litigation Reform Act ("PLRA"), to exhaust any available administrative remedies before filing a lawsuit. *See* 42 U.S.C. § 1997e(a). Although failure to exhaust is an affirmative defense and not a pleading requirement, "a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Wang v. Quiros*, 2023 WL 6442833, at *3 (D. Conn. 2023) (quoting *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016)).

### Declaratory Relief

Mitchell seeks a declaratory judgment "stating the violations of the plaintiff's constitutional rights."[41] However, "[i]t is settled law in this circuit that an inmate's transfer or release from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Mitchell v. Martin*, 2023 WL 8114344, at *3 (D. Conn. 2023) (quoting

---

[40] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.
[41] Doc. #17 at 14.

*Mitchell v. Annucci*, 2023 WL 7648625, at *2 (2d Cir. 2023)). Because Mitchell was transferred

to Garner and is no longer held at either MacDougall or Corrigan, I will dismiss as moot his

claim for declaratory relief.

### Fifth Amendment claims

Mitchell claims that the actions of all six defendants violated the Fifth Amendment.[42]

This cannot be, because the Fifth Amendment guards against abuses by the federal government.

It does not apply to claims against state officials, such as employees of state prisons. *See Jackson*

*v. Walker*, 2022 WL 16573562, at *3 (D. Conn. 2022) ("[T]he Fifth Amendment Due Process

Clause applies to federal, not state, inmates."). Accordingly, I will dismiss his Fifth Amendment

claims, without prejudice to any related claims brought under the Fourteenth Amendment Due

Process Clause.

### Eighth Amendment deliberate indifference to medical needs

A prison official violates the Eighth Amendment—which prohibits the infliction of cruel

and unusual punishment—if she exercises "deliberate indifference" toward a prisoner's serious

medical needs. *See* U.S. CONST. amend. VIII; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).[43] In

the Second Circuit, a prisoner who brings a claim of deliberate indifference must satisfy two

requirements. *See Thomas v. Wolf*, 832 Fed. App'x 90, 92 (2d Cir. 2020). The first is an

objective standard that considers whether the deprivation of care was "sufficiently serious."

*Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). A

deprivation is "sufficiently serious" when there exists "a condition of urgency, one that may

---

[42] *Id.* at 13 (¶¶ 43-48).

[43] Although Mitchell alleges both "deliberate indifference" and "cruel and unusual punishment" by Schauer and Grande, "these claims are based on the same facts and are different ways of phrasing the same Eighth Amendment claim." *Elliston v. Caron*, 2022 WL 1471305, at *2 (D. Conn. 2022). The Eighth Amendment is enforceable against state officials through the Fourteenth Amendment.

produce death, degeneration, or extreme pain." *Adamson v. Miller*, 808 Fed. App'x. 14, 18 (2d Cir. 2020).

The second requirement is subjective: the defendant must have acted "recklessly," meaning that she "knew of and consciously disregarded an excessive risk to inmate health or safety." *Wolf*, 832 Fed. App'x. at 92. "[M]ere allegations of negligent malpractice do not state a claim of deliberate indifference." *Ibid.* (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). Likewise, "an inmate's disagreement with the defendant's medical judgment as to the proper course of treatment cannot support a constitutional claim for deliberate indifference." *Rosa v. Cook*, 2022 WL 7517256, at *5 (D. Conn. 2022).

Mitchell alleges that APRN Schauer violated his Eighth Amendment rights through three separate courses of conduct: (1) failing to inform him of or treat his high cholesterol; (2) prescribing him unnecessary medication that affected his liver; and (3) failing to provide him treatment "correctly and adequately," which caused a skin infection to spread.[44] As to the first of these allegations, high cholesterol is an urgent condition in that—if left untreated—it can produce deadly events such as heart attacks. Indeed, Mitchell reports having suffered a heart attack following Schauer's failure to advise him of his condition. Thus, failing to inform him of his high cholesterol or begin treatment meets the objective standard.

Mitchell has also furnished facts that, if true, would meet the subjective prong of the test: Schauer knew Mitchell had a family history of heart disease that, in at least one case, had proved fatal. Therefore, failing to begin treatment was reckless. *See Gray v. Lamont*, 2021 WL 2037958, at *2, *4 (D. Conn. 2021) (assuming, for purposes of initial review, that high cholesterol is a serious need and permitting claims against nurse who failed to tell prisoner results of blood test).

---

[44] Doc. #17 at 10 (¶ 30).

Finally, Mitchell alleges exhaustion by stating that, in March of 2023, subsequent to his discovery of his high cholesterol, he filed grievances related to his medical treatment.

As to Schauer's treatment of his skin condition, Mitchell has failed to show the requisite recklessness. Instead, he has presented facts suggesting medical negligence or malpractice, which are not cognizable claims under the Eighth Amendment. Even if he has shown recklessness, he has not furnished any facts suggesting the infection was one that might lead to death, degeneration, or extreme pain.

Finally, his allegation about unnecessary medication constitutes a disagreement about treatment, which is also not cognizable under the Eighth Amendment. *See Oh v. Saprano*, 2020 WL 4339476, at *9 (D. Conn. 2020) (dismissing prisoner's claim that he was prescribed unnecessary vitamins because the allegations rested on "a simple disagreement about a course of treatment with a medical provider"). Accordingly, I will dismiss Mitchell's claims against Schauer except for his claim with respect to his high cholesterol.

Several of Mitchell's claims against APRN Grande fail for the same reasons described above. His allegations that Grande prescribed unnecessary blood pressure and prostate medication reveal a disagreement about the proper course of treatment that is not actionable under the Eighth Amendment. His claim that she prescribed him incorrect medication for his skin infection—without any facts suggesting she did so recklessly or intentionally—states at most a claim of negligence, not Eighth Amendment deliberate indifference. Her transmission of only some, not all, of Mitchell's lab work did not subject him to a risk of death or extreme pain. Nor did her alleged attempt to hide Mitchell's medical issues from UConn staff, who were examining Mitchell themselves and so able to draw their own conclusions.

Similarly, Grande's failure to review and act on his chart for almost twenty days does not support a claim of Eighth Amendment deliberate indifference. The Second Circuit has instructed that "[w]hen the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (emphasis in original). Nor do the facts surrounding the delay of 20 days suggest subjective recklessness rather than negligence.

Grande's alleged disregard of a UConn cardiologist's orders to place a heart monitor on Mitchell does not rise to the level of an Eighth Amendment violation. Failure to monitor and treat a heart condition could result in death or the degeneration of a vital organ, and any reasonable person would be on notice that disregarding a cardiologist's instructions could lead to serious harm. *See Quint v. Martin*, 2023 WL 319232, at *5 (D. Conn. 2023) ("Intentionally failing to follow a doctor's order is sufficient to state a cognizable claim for deliberate indifference to medical needs."). But Mitchell does not allege any actual harm from the failure to monitor his heart, so he has not alleged a sufficiently serious medical deprivation.

Mitchell also brings Fourteenth Amendment claims against Schauer and Grande that arise out of the same set of facts as do his Eighth Amendment claims. But "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing' [the] claim." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "Because

10

the Eighth Amendment specifically governs [Mitchell's] right to be free from deliberate indifference to his . . . serious medical needs, there is no basis for a generalized due process claim under the Fourteenth Amendment." *Awad v. Moskites*, 2019 WL 109336, at *6 (D. Conn. 2019). Accordingly, I will dismiss Mitchell's Fourteenth Amendment claims.

### *Improper grievance handling*

Mitchell claims that Walker and Moure's handling of health service grievances violated his First, Eighth, and Fourteenth Amendment rights.[45] The Court construes his First Amendment claim as encompassing two: violation of his right to redress of grievances and unconstitutional retaliation. As to the first claim, it must fail. "Because the Constitution does not require prison officials to create administrative grievance procedures, the failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a constitutional claim." *Currytto v. Doe*, 2019 WL 2062432, at *9 (D. Conn. 2019); *see also Riddick v. Semple*, 2017 WL 2174942, at *2 (D. Conn. 2017).

To establish a First Amendment retaliation claim, a plaintiff must show that the speech or conduct at issue was protected; that the defendant took adverse action against the plaintiff; and that there was a causal connection between the protected speech and the adverse action. *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019). "The filing of prison grievances is a protected activity." *Ibid.*; *see also Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). In this case, however, Mitchell has alleged no facts to suggest that Walker had a retaliatory motive or was deliberately punishing him by means of mishandling his grievances. He states only that she did

---

[45] *Id.* at 13 (¶¶ 43-44). Against Moure, he also makes claims of "false allegations" and "abuse of authority and retaliation." The Court assumes these are related to other factual allegations against Moure, and discusses them in the "Prison Transfer" section of the ruling, below.

mishandle them and that she "has a pattern of misconduct" in this regard.[46] This does not establish causation with respect to Walker.

As for Moure, although Mitchell does offer facts detailing alleged retaliation by her, they are wholly unrelated to her practice of "collecting health services grievances despite being unauthorized to do so."[47] Thus, I will dismiss Mitchell's First Amendment claim against Walker, and I will dismiss it against Moure insofar as it rests on grievance mishandling.

As to Mitchell's Eighth Amendment claim, he has not shown that mishandling or ignoring his grievances led to a situation that would satisfy the objective prong of the deliberate indifference test; he has not even stated what information the grievances in question contained.

Mitchell's Fourteenth Amendment claims also fail for the same reason his right-to-redress claims fail: because there is no Constitutional right to grievance processes, there is no due process violation when grievances are mishandled. *See Diaz v. Williams*, 2022 WL 16901985, at *7 (D. Conn. 2022) ("[P]risoners do not have a due process right to a thorough investigation of grievances."); *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) ("Prison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment.").

### *Retaliation claims related to prison transfer*

Mitchell's factual allegations related to the prison transfer are not entirely clear. For instance, he states that Moure falsely claimed he tried to contact her directly—an apparently prohibited practice—while also stating that he "wrote a request/complaint to [her]."[48] Therefore, although Mitchell alleges that Moure engaged in some form of retaliation against him, the

---

[46] *Id.* at 7 (¶ 8).
[47] *Id.* at 7 (¶ 9).
[48] *Id.* at 7 (¶ 10).

complaint does not intelligibly allege what Mitchell did to prompt Moure to retaliate against him or what Moure did in response. Moreover, although Mitchell claims that Moure retaliated against him by means of a transfer to another prison facility, he does not allege any facts to suggest that Moure—who is alleged to be a laboratory technician—had authority to transfer him to another prison facility.

Mitchell alleges that Stanley condoned and assisted Moure, but he does not allege facts to show that Stanley did so in order to retaliate against Mitchell for engaging in protected speech activity. As to Snyder, it is not clear from the facts whether he even knew of Moure's alleged false statements when he approved Mitchell's transfer.

Mitchell's claim that he was transferred "to alleviate issues with staff" is wholly conclusory and does not supply the factual basis necessary to establish causation.[49] Nor has Mitchell offered any facts at all to support his speculation that he was transferred "in part" because of his work helping the prison population with legal issues.[50] Finally, "[t]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Mitchell has failed to do so here, and I will dismiss his claim against Snyder.

Construing Mitchell's Fifth Amendment claims against Moure, Stanley, and Snyder as Fourteenth Amendment due process claims, I conclude they also must fail. Incarcerated individuals "ha[ve] no liberty interest in remaining at a particular correctional facility." *Granger v. Santiago*, 2021 WL 4133752, at *6 (D. Conn. 2021). While a transfer may be actionable if

---

[49] *Id.* at 10 (¶ 25).
[50] *Id.* at 10 (¶ 28).

effected *in retaliation* for exercising a constitutional right, the transfer alone is not a due process violation. *See Gomez v. Westchester Cnty.*, 2020 WL 635577, at *7 (S.D.N.Y. 2020) ("[W]here prison authorities have unfettered discretion to transfer prisoners from one institution to another, a prisoner's interest in avoiding transfer to an institution affording less favorable living conditions is insufficient to qualify for due process protection.") (quoting *Pugliese v. Nelson*, 617 F.2d 916, 922 (2d Cir. 1980)).

CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

1. Mitchell may proceed with his Eighth Amendment claim for deliberate indifference to serious medical needs against APRN Sarah Schauer in her individual capacity only.

2. The Court otherwise DISMISSES all other claims and defendants.

3. The Clerk shall verify the current work address for APRN Schauer with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to that defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver request by no later than the **thirty-fifth (35) day** after mailing. If APRN Schauer fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on her, and she shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

4. APRN Schauer shall file a response to the complaint, either an answer or motion to dismiss, **within sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to her. If APRN Schauer chooses to file an answer, she shall admit or deny the allegations and respond to the cognizable claim recited above. This initial review order has been issued *sua sponte* in accordance with 28 U.S.C. § 1915A and is without prejudice to the

right of the defendant to seek relief by way of a motion pursuant to Rule 12 of the Federal Rules of Civil Procedure or other pleadings-level relief.

7. The discovery deadline is extended to **six months (180 days)** from the date of this Order. Note that discovery requests should not be filed with the Court. In the event of a dispute over discovery, the parties should make a good faith effort to resolve the dispute amongst themselves; then, the parties should file the appropriate motion to compel on the docket.

8. The deadline for summary judgment motions is extended to **seven months (210 days)** from the date of this Order. Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion (i.e., a motion to dismiss or a motion for summary judgment) **within twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the Court may grant the dispositive motion without further proceedings.

9. If Mitchell changes his address at any time during the litigation of this case, Local Court Rule 83.1(d)(1) provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Mitchell must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.

10. The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

It is so ordered.

Dated at New Haven this 3d day of May 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

15